# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GENWORTH LIFE AND ANNUITY INSURANCE COMPANY,<br><br>Plaintiff(s),<br><br>v.<br><br>NATALIE M. RUCKMAN, et al.<br><br>Defendant(s). | Case No. 2:18-CV-1470 JCM (VCF)<br><br>ORDER |

Presently before the court is plaintiff Genworth Life and Annuity Insurance Company's ("Genworth") motion for attorney's fees and costs. (ECF No. 47). Defendant Natalie Ruckman ("Ruckman") filed a response (ECF No. 59), to which Genworth replied (ECF No. 62).

Also before the court is Genworth's unopposed motion for final discharge. (ECF No 48).

Also before the court is Ruckman's motion for summary judgment. (ECF No. 63). Genworth filed a response (ECF No. 65), but Ruckman has not filed a reply and the time to do so has passed.

**I.    Background**

The instant case arises from allegedly competing claims to the proceeds of Eric J. Ruckman's ("decedent") $200,000 life insurance policy ("policy"). (ECF No. 10). Genworth filed the instant complaint in interpleader pursuant to 28 U.S.C. § 1335.

First Colony Life Insurance Company issued a life insurance policy, number 5597691, with a $200,000 death benefit to decedent on April 19, 2000. *Id*. Genworth later assumed the policy. *Id*. At the time of issuance, decedent designated his wife, Ruckman, as the beneficiary.

**James C. Mahan**
**U.S. District Judge**

*Id*. On or about January 12, 2010, decedent and Ruckman divorced. *Id*. The final divorce decree did not address the disposition of the policy. *Id*.

On July 14, 2016, decedent died in Las Vegas, Nevada. *Id*. On August 21, 2016, Ruckman presented to Genworth a claim for the death benefit and an accompanying death certificate. *Id*. Ruckman asserted that she was the rightful beneficiary of the policy despite the Nevada divorce revocation statute, NRS 111.781. *Id*.

On August 8, 2018, Genworth initiated the instant action in interpleader pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22. (ECF No. 1). In its complaint, Genworth named Ruckman and the estate of Eric J. Ruckman ("estate") as defendants. (ECF No. 10).

On November 29, 2018, Genworth moved for entry of clerk's default against the estate. (ECF No. 30). The next day, the clerk entered default. (ECF No. 31). On December 3, 2018, an affidavit was filed with the court in which decedent's daughter stated that decedent intended to give his death benefit to Ruckman. (ECF No. 32). On February 13, 2019, Genworth deposited the death benefit with the clerk of this court. (ECF Nos. 42, 46). The deposit was for $212,959.93 (the $200,000 death benefit plus applicable interest). (ECF No. 46).

Default judgment was entered against the estate on March 28, 2019. (ECF No. 55).

Now, Genworth moves for the award of attorney's fees and costs (ECF No. 47) and for final discharge from this action (ECF No. 48). Ruckman moves for summary judgment. (ECF No. 63).

**II. Legal Standard**

*a. Discharge and attorney's fees*

As a preliminary matter, the court first determines whether the requirements for an interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund. *See Mack v. Kuckenmeister*, 619 F.3d 1010, 1023–24 (9th Cir. 2010). If the district court finds that the interpleader action has been properly brought, it must then "make a determination of the respective rights of the claimants." *Id*. (quoting *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999)).

Under the federal interpleader statute, 28 U.S.C. § 2361, a disinterested plaintiff who deposits the entire disputed fund with the court may be discharged from further liability, leaving the remaining claimants to resolve their dispute. *See* 28 U.S.C. § 2361 ("Such district court shall hear and determine the case, and may discharge the plaintiff from further liability….").

"Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action." *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir. 1984).

b. *Summary Judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. Where the party moving for summary judgment would bear the burden of proof at trial, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If

the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material fact conclusively in its favor. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.    Discussion**

   *a. Genworth's motion for final discharge*

In determining whether to discharge Genworth from this action, the court must first consider whether Genworth had the right to interplead. Although Ruckman does not oppose Genworth's motion for final discharge, her opposition to Genworth's motion for attorney's fees and costs is predicated in part on the merits of the interpleader. (*See* ECF No. 59).

Ruckman contends that this interpleader action is not properly brought because there are no (and never have been) any conflicting claims to the life insurance proceeds. (ECF No. 59).

- 4 -

Genworth responds that the interpleader statute is satisfied where a stakeholder files an interpleader action to protect itself from potential, as well as actual, claims. (ECF No. 62). Genworth contends that the estate had a potential claim to the life insurance proceeds because NRS 111.781, the Nevada divorce revocation statute, applied retroactively to revoke Ruckman's status as beneficiary under the life insurance policy. *Id.*

In *Minnesota Mutual Life Insurance Co. v. Ensley*, the Ninth Circuit found that "[t]he [district] court's jurisdiction under the interpleader statute extends to potential, as well as actual, claims." 174 F.3d 977, 980 (9th Cir. 1999). However, "an asserted adverse claim may be so wanting in substance that interpleader under the statute may not be justified." *New York Life Ins. Co. v. Lee*, 232 F.2d 811, 812 (9th Cir. 1956). At least one court has gone so far as to deny interpleader where there is a single claimant to a fund and any potential claimants affirmatively disavowed their interest in the fund. *See, e.g.*, *Dunbar v. United States*, 502 F.2d 506, 510–11 (5th Cir. 1974).

The court finds that this interpleader action is legally permissible. First, there is only a single fund at issue—the life insurance proceeds. Second, although the estate, the only other party that could have seemingly asserted an adverse claim to the life insurance proceeds, has disclaimed any such interest (*see* ECF No. 32), Genworth could have reasonably concluded that there existed a potential adverse claim to the policy proceeds at the time this action was filed.

NRS 111.781 provides that "[t]his section applies only to nonprobate transfers which become effective because of the death of a person on or after October 1, 2011, regardless of when the divorce or annulment occurred." Nev. Rev. Stat. § 111.781.10. Because life insurance proceeds qualify as a nonprobate transfer under Nevada law (*see* Nev. Rev. Stat. § 111.721), and because decedent died after October 1, 2011 (*see* ECF No. 63), the statute appears to revoke Ruckman's status as beneficiary under the life insurance policy. Accordingly, Genworth could have reasonably concluded the estate had a potential claim to the life insurance proceeds, and this interpleader action has been appropriately brought as a result.

Having now found that this interpleader action is appropriate, the court will address Genworth's motion for final discharge. As is noted above, Ruckman does not oppose

James C. Mahan
U.S. District Judge

- 5 -

Genworth's discharge from this action. Based on Ruckman's nonopposition and in light of Genworth's position as a disinterested party that has deposited the full amount of the life insurance proceeds with the clerk of this court, the court will grant Genworth's motion for final discharge. Accordingly, Genworth is discharged from any further liability on the policy.

   b. *Genworth's motion for attorney's fees and costs*

"The amount of fees to be awarded in an interpleader action is committed to the sound discretion of the district court." *Trustees of Directors Guild of America–Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000). Attorney's fees in an interpleader action are "properly limited to those fees that are incurred in filing the action and pursuing the plan's release from liability, not in litigating the merits of the adverse claimants' positions." *Id*.

Attorney's fees awarded to an interpleader plaintiff are typically modest, particularly because "there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Id*. at 427.

In deciding what amount of attorney's fees to award, courts apply the lodestar method by "multiplying the number of hours expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The reasonableness of the requested fee is then determined with reference to the twelve *Kerr* factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). A district court may reduce the amount of requested fees to reflect a party's limited degree of success, to account for block billing, or to deduct hours deemed excessive as long as it provides an adequate explanation for its fee calculation. *Ryan*, 786 F.3d at 763.

A party moving for attorney's fees must also meet the requirements set forth in Local Rule 54-14, which states in part:

> (b) Content of Motions. Unless the court orders otherwise, a motion for attorney's fees must include the following in addition to those matters required by Fed. R. Civ. P. 54(d)(2)(B):
> (1) A reasonable itemization and description of the work performed;
> (2) An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable under LR 54-1 through 54-13;
> (3) A brief summary of:
> (A) The results obtained and the amount involved;
> (B) The time and labor required;
> (C) The novelty and difficulty of the questions involved;
> (D) The skill requisite to perform the legal service properly;
> (E) The preclusion of other employment by the attorney due to acceptance of the case;
> (F) The customary fee;
> (G) Whether the fee is fixed or contingent;
> (H) The time limitations imposed by the client or the circumstances;
> (I) The experience, reputation, and ability of the attorney(s);
> (J) The undesirability of the case, if any;
> (K) The nature and length of the professional relationship with the client;
> (L) Awards in similar cases; and
> (M) Any other information the court may request.

LR 54-14(b).

Further, a motion for attorney's fees and costs must be accompanied by an affidavit from the attorney responsible for the billings in the case to authenticate the information contained in the motion, and to prove that the fees and costs sought are reasonable. LR 54-16(c). A failure to provide the documentation required by LR 54-16(b) and (c) in a motion for attorney's fees "constitutes a consent to the denial of the motion." LR 54-16(d).

"In an interpleader action, it is within the court's discretion to award costs to the stakeholder." *Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir. 1982).

Genworth requests attorney's fees in the amount of $25,001.50 and costs in the amount of $1,244.30. (ECF No. 47). Genworth's lead counsel Russell Buhite has filed an affidavit to authenticate and prove the reasonableness of this request. (ECF No. 47-1). In response, Ruckman first argues that this impleader action has been impermissibly brought, such that no

James C. Mahan
U.S. District Judge

attorney's fees may be awarded.[1] Ruckman then argues that the life insurance policy does not contain any provision for attorney's fees in the event of a dispute. *Id*. In addition, Ruckman contends that Genworth's request for attorney's fees is unreasonable and inadequately supported. *Id*.

The court finds that Genworth's discussion of the Local Rule 54-14 factors is insufficient to grant an award of attorneys' fees. (*See* ECF Nos. 47, 47-1, 62). Rule 54-14 provides that, "[u]nless the court orders otherwise, a motion for attorney's fees must include . . . [a] reasonable itemization and description of the work performed," "[a]n itemization of all costs sought to be charged as part of the fee award and not otherwise taxable …," and "[a] brief summary" of the fourteen factors set forth therein. LR 54-14(b).

Instead, Genworth merely asserts that "[t]he fees requested in the instant matter … are both customary and reasonable given the nature of the Interpleader claim," and submits that its attached affidavit adequately sets forth the basis for the hourly rates and hours requested. (ECF No. 47). For the attorneys and paralegal involved, the affidavit provides an hourly rate and the years of experience for each. (ECF No. 47-1). The affidavit then states that "[t]he amount billed in this matter represents approximately 67.3 hours of attorney time, 1.3 hours of paralegal time, and costs in the amount of $1,244.30 for filing fees, computer research, and mailing charges." *Id*.

No further detail is provided to address the reasonableness of the hourly rates or hours spent, the degree of complexity of the questions involved, or the other factors set forth in *Kerr* and Local Rule 54-14. Without more, the court is unable to determine an appropriate award of fees and costs. The court will therefore deny Genworth's motion for attorney's fees and costs.

*c. Ruckman's motion for summary judgment*

Ruckman contends that there are no, and never have been any conflicting claims to the life insurance proceeds at issue. (ECF No. 63). Ruckman argues that she is the designated beneficiary of the policy, that decedent intended for her to remain as beneficiary after their

---

[1] For the reasons set forth in section III.a above, the court finds that this impleader action is legally permissible, such that the propriety of this action alone is not a bar to the recovery of attorney's fees. The court accordingly rejects Ruckman's argument to the contrary.

James C. Mahan
U.S. District Judge

divorce, and that NRS 111.781 does not apply because it was enacted after Ruckman and decedent divorced.

Prior to 2011, the general rule in Nevada was that "the rights of the beneficiary in an ordinary life insurance policy [were] not affected by subsequent divorce, particularly where no attempt [was] made to change the beneficiary after the divorce and the insured [kept] up payments on the policy." *Redd v. Brooke*, 604 P.2d 360, 361 (Nev. 1980). "However, in 2011 the Nevada legislature reversed that general rule by passing NRS 111.781, which provides that, unless explicitly stated in the governing instrument, the effect of a divorce or annulment is the revocation of any revocable disposition of property to a former spouse." *John Hancock Life Ins. Co. (U.S.A.) v. Jacobs*, No. 2:13–cv–00557–APG–GWF, 2015 WL 3903598, at *2 (D. Nev. June 25, 2015). Under NRS 111.781.3, "[t]he provisions of a governing instrument are given effect as if the former spouse and relatives of the former spouse disclaimed all provisions revoked by this section …." Nev. Rev. Stat. § 111.781.3.

In 2015, NRS 111.781 was amended to apply retroactively. 2015 Nev. Stat., ch. 524, § 3, at 3523. Subsection 10 of the statute now provides that "[t]his section applies only to nonprobate transfers which become effective because of the death of a person on or after October 1, 2011, *regardless of when the divorce or annulment occurred*." Nev. Rev. Stat. § 111.781.10 (emphasis added).

As is stated in section III.a above, NRS 111.781 applies retroactively to revoke Ruckman's status as beneficiary under the life insurance policy. This is so regardless of when the underlying divorce took place. *See id*. As such, Ruckman has no legal entitlement to the life insurance proceeds under the policy.

Per the terms of the policy, the proceeds must be disbursed to the estate. The policy provides that "[t]he interest of a beneficiary terminates if that beneficiary dies or ceases to exist before the Insured dies. If no beneficiary survives or is in existence at the Insured's death, payment will be made to the owner or the owner's estate or successors." (ECF No. 10-1 at 4). Pursuant to NRS 111.781, Ruckman is treated as if she had disclaimed her interest in the life insurance proceeds at the time of her divorce in 2010. Her beneficiary status had thus ceased to

James C. Mahan
U.S. District Judge

- 9 -

exist at the time of decedent's death in 2015. Because no other beneficiaries are named in the policy, the life insurance proceeds must therefore be disbursed to the estate.

**IV.** **Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Genworth's motion for attorney's fees and costs (ECF No. 47) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Genworth's unopposed motion for final discharge (ECF No. 48) be, and the same hereby is, GRANTED. Genworth is discharged from all liability whatsoever with regard to all matters relating to life insurance policy number 5597691, originally issued by First Colony Life Insurance Company and assumed by Genworth, including but not limited to payment of the death benefit and handling of competing claims.

IT IS FURTHER ORDERED that Ruckman's motion for summary judgment (ECF No. 63) be, and the same hereby is, DENIED. The court clerk is hereby ordered to pay the $212,959.93 death benefit deposited with the court on February 13, 2019 (ECF No. 46) to the estate of Eric J. Ruckman.

The clerk shall enter judgment accordingly and close the case.

DATED November 22, 2019.

_____
UNITED STATES DISTRICT JUDGE